v. Dave Jacobson v. Dave Jacobson v. Dave Jacobson v. Dave Jacobson The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit Hear ye, hear ye, hear ye All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning ladies and gentlemen. The first case this morning is F.C. Stone Financial v. D. Jacobson. Good morning. May it please the Court. F.C. Stone sued its customers, our clients, in order to stop arbitrations from proceeding before FINRA. The sad irony that this case ended up in litigation is that there was actually no underlying dispute between the parties that the case belonged in arbitration. In other words, the dispute was not about whether the parties agreed to arbitrate, the dispute was, as the District Court called it, where to arbitrate, or as the Supreme Court in the Green Treaty referred to it, what kind of arbitration the parties agreed to. And F.C. Stone objected to arbitrating before the AAA, even though they initially offered the AAA as an option to its customers. And they objected to arbitrating before FINRA, even though they are indisputably a member of FINRA and obligated under FINRA's rules to arbitrate with its customers. And rather than let FINRA decide the objections that F.C. Stone placed to arbitrating before FINRA, they went to court. And the District Court erred in not simply dismissing the case at the outset and letting FINRA decide the challenges to its own jurisdiction. And the District Court compounded its error by granting injunctions and declaratory relief against the FINRA arbitrations, which were not available under law. And thirdly, the District Court erred by ordering the customers to arbitrate before the NFA, and in doing so, the court further granted relief that was not available under law and that took away their right to an impartial arbitral forum, which is set forth in CFTC Rule 166.5. Mr. Searby, I'll have Mr. Krebs comment on this as well when he argues, but what's the purpose of the District Court's stay here in the January 7, 2020, status hearing? I believe there's no purpose for it, Judge. In June, the court granted all the relief that FC Stone needed. There's nothing left for FINRA. It's now before the NFA. Who's asking for the stays? Are those court-generated, is it plaintiff-generated, defense-generated? It's plaintiff-generated in our view. They suggested to the court to stay the action. In our view, what they're doing is posturing to try to get under a series of decisions that don't apply regarding appellate jurisdiction, but there's frankly no reason for a stay. The only issue that's still down in the District Court is FC Stone is seeking hundreds of thousands of dollars in attorney's fees against our clients for filing an action that we submit never should have been filed in court. What's surprising to us about everything that's transpired here is how strong the law is in the Seventh Circuit against doing what FC Stone has done and what the District Court has ordered. The Seventh Circuit for decades has strongly discouraged pre-arbitration litigation, and we get the strongest statement of that in AT&T Broadband where this court said that a party to an arbitration clause must abide by a system that postpones any judicial review of even the question of arbitrability until after the arbitration decision. Does it matter about the question of which arbitrator? Is that something that is going to be decided early on? I don't think that changes this court's bar on going forward. The District Court attempted to distinguish AT&T Broadband, not by the way in the way FC Stone is trying to do it, but to distinguish it under the idea that you could end up with two different arbitrations. But the fallacy in that distinction is a couplefold, but one of which was that without the court's assistance, the District Court's assistance, the arbitrations in the NFA were never going forward. So there was never this problem of two different arbitration panels that the court had to resolve. Moreover, I would submit if it comes out of your lawn in AT&T Broadband, Trustmark, and other cases, if a party that contests whether they have any obligation to arbitrate at all has to wait through the arbitration to come to court and seek to vacate it, then why does someone who agrees that they have an obligation to arbitrate but claims they're being forced to arbitrate in the wrong forum have more rights? It just doesn't make sense. And the rationale underlying this court's strong law stopping people from putting arbitral disputes into litigation is to avoid the cost of litigation because that denies the very promise of arbitration. Our clients gave up their rights to go to court with the hope that they were going to get a process that was faster and cheaper than litigation. That's what Moses Cohn talks about in many other cases, including many decisions in the Seventh Circuit. But that promise of arbitration has been taken away from us by ending up in protracted litigation in the district court. And Bradford Scott, the Seventh Circuit's opinion, talks about this as the worst possible outcome. Well, the outcome we've already achieved in this case is worse, I think, than Judge Easterbrook could have imagined it would be in Bradford Scott. On that issue, Mr. Searby, Rule 58 requires every judgment, an amended judgment, must be set out in a separate document. In the district court record, is there a document that sets out a judgment setting forth the relief for one party or another? There are declaratory judgments against FINRA, but they're not set out in a separate document. So that's the district judge's 19-page opinion and order with the order at the end, but not a separate document. Is that correct? So the separate judgment rule does not affect appealability. It affects the timing of when a party has to appeal. Moreover, if you look at FAA Section 16, it doesn't require a final judgment. It requires a final decision. And the district court's decision in June was a final decision because it gave FC Stone all the relief it needed and resolved all the motions pending before the court, including the customer's motions for Rule 11 sanctions. So the district court's order undermines the decisions of this court. It undermines the Seventh Circuit's strong discouragement to litigants to come to court before arbitration and start fighting in court about arbitral issues. And the district court's decision creates conflicts in the decisions below in the Northern District of Illinois now, including Judge Finerman's very right decision, which follows AT&T broadband in a case we cite, University of Chicago. Underlying the rule that bars litigants from coming to court to challenge arbitral matters before the arbitral decision are a few other ideas. One is the reality is a court that takes one of these cases has no power before the arbitral decision to stop the arbitration or to otherwise impact it, meaning they cannot show their entitlement to a preliminary injunction, although they tried to do it, because they can't show irreparable harm and they can't show a lack of adequate remedy at law. And that's where we got unhappy, because they came in and they claimed that the cost of having to arbitrate was irreparable harm. Well, the law of the Seventh Circuit could not be clearer that it's not. And this court's called it, quote unquote, sanctionally frivolous to seek a anti-arbitration injunction. In addition, their effort to get declaratory judgments should have never been granted. It is contrary to the law of this court, going back at least to the Sears-Roebuck decision in the 60s, that a court should not issue declaratory judgments to interfere with another action. Moreover, the Supreme Court in Wilton v. Seven Falls said it would be highly inappropriate for a court to entertain a declaratory judgment action when the same parties and the same issues are pending in another matter. Well, they were. They were pending before FINRA. F.C. Stone put its objections before FINRA. And the district court could have made this easy. The district court simply should have deferred to FINRA to make the initial decision. If F.C. Stone won, then its objections were resolved. If they lost, they would go forward and arbitrate on the merits. And if they won that, the whole case was resolved. If they lost, they could come back to court and argue that FINRA lacked jurisdiction. And at that point, they were entitled to judicial review. That's their adequate remedy. These aren't original ideas to myself. This is what the Seventh Circuit said in Trustmark, in AT&T Broadband, in the clearest terms. Mr. Searby, these arguments on the merits, we appreciate them. But obviously, we first have to determine whether or not we have appellate jurisdiction. Right. And the parties disagree with regard to that. How do you respond to the Maglia case from 2008 about Section 16B here forbidding appeals? And we don't have a 1292 order here. Is your argument, we all know where this case is heading as a result of the last page of the district court order? Because it strikes me that there's daylight between the last page of the district court's order and a judgment under Rule 58. That's not our argument. The Maglia case doesn't apply because what Maglia basically says is that pro-arbitration decisions are not appealable. Well, this was an anti-arbitration decision. I mean, the original purpose in filing this lawsuit was to stop the FINRA arbitrations and to get declaratory judgments against FINRA to make them stop. So this case is very different from Maglia. In fact, in Maglia, this court emphasized that the court did not enter an injunction. Well, in this case, the court did enter an injunction. It ordered us to take our claims, which were pending in FINRA, and to refile them in a different forum in the NFA. Every second-year law student knows that's an injunctive relief. And FC Stone has not argued in its briefing that is otherwise. Under 9 U.S.C. 16A2, there is appellate jurisdiction for an interlocutory order granting an injunction against an arbitration. And that's what we had here. In addition, as I've said, we do have a final decision. And again, and we cite case law on this point, but what doesn't matter is whether there's an actual separate judgment. What matters is there's a final decision. And again, the court resolved all the issues pending before it. Is the matter, excuse me for being a little hoarse here, but is the issue about which arbitrator? Is it basically first come, first served? The first one that gets into arbitration gets to stay there, like in FINRA? Essentially, yes. But the key point on this, about the fairness of it, was we're through the gateway already under Howsam. The question in Howsam that the court was concerned with was a part of being forced into arbitration that it never agreed to arbitrate. Here, FC Stone, by virtue of its membership in FINRA, agreed to arbitrate disputes with its customers in FINRA. The question is they wanted to lodge various challenges to FINRA proceeding with the case, the first of which was they argued in their papers and they alleged in their complaint that by signing the separate arbitration agreement, the customers waived their right to go to FINRA. Well, what do we know about that argument? It sounds in waiver. And what it means is it's a question that is outside the authority of the court to decide, under the Howsam divide. And that's abundantly clear from this court's decision in Lumberman's as well as the Supreme Court decision that the Seventh Circuit's decision in Lumberman's followed. Does that answer your question? So the district court further erred in taking decisions that belong to the arbitrators and deciding them. And what's interesting is about some of the arguments they make is that they're intertwined with the underlying merits disputes. They go to questions of what was the relationship with the customers, what was the business transacted, et cetera. And this court in Lumberman's said that when your decisions are intertwined with the ultimate merits decisions that everybody agrees would be decided by the arbitrators, then that's a factor that weighs in favor of the court deferring and allowing FINRA to decide the issue. In addition, as this court knows, you can delegate even the issue of arbitrability. And that's an issue discussed in the Supreme Court's most recent case on arbitrations, Henry Schein. Here, FC Stone delegated the issue of arbitrability to the arbitrators in two ways. One was they put forward, they drafted it. We didn't. Our clients signed it. But they put forward an agreement that said any controversy will be decided in arbitration. Any controversy arising from the agreement will be decided in arbitration. In addition, as I've said, they agreed with FINRA to arbitrate disputes. FINRA has a process at the outset to decide whether a dispute really belongs in FINRA. But FC Stone wouldn't allow FINRA to decide it. The decision that the court ended up making, I want to come back to this point, confronted with the law of this court, which strongly supported that there was no entitlement to injunctive relief. There was no availability to enjoin an arbitration under the controlling law of this circuit. FC Stone formulated its papers and then styled it as a petition to compel. But as I've said, that was still injunctive relief. And the important point I want to emphasize is the FAA does not allow an anti-arbitration injunction. And that's exactly what it was when the June order said to the customers, you have to take your claims pending before FINRA, and you've got to file them in the NFA. In addition, the district court erred in holding, in making this decision, that the arbitration agreement specified the NFA. If you look at that one-page arbitration agreement, you'll see that it didn't specify the NFA. In fact, under CFTC Rule 166.5, FC Stone had to afford its customers the right to a forum that was outside of the futures industry. But in the end, what the district court's order did was take away that right to an impartial forum. In fact, what the court found was that there was a waiver because the customers did not elect their forum within 45 days. There were a couple of basic factual problems with that. The first was that, as a basic equity issue, the arbitration agreement didn't tell the customers that they had to file it within 45 days. In fact, the December 13th email that FC Stone sent to the customers, giving them the three choices, including the one impartial forum, if you will, the AAA didn't tell them they had 45 days to respond. The 45-day rule comes from the CFTC rules, but it was basically unfair to enforce a 45-day requirement when FC Stone didn't provide notice to it, as it should have. In addition, the basic point is that 166.5 is set up to afford an impartial choice of forum. And here, before the 45-day rule ran, FC Stone sent that letter, that January 24th letter to AAA, where it basically denied it had an agreement to arbitrate. It did not acknowledge that it offered AAA arbitration as an option. And it basically sent a message not only to the customers that filed an arbitration, but to all the customers who might file in AAA later, that they would never consent to arbitrate before the AAA. So at that point, they repudiated their own agreement, and it was simply inequitable to use that against the customers to force them into the National Futures Association when federal law is clear that you have to go there voluntarily. I see my time is up. I'll reserve the remainder. Thank you, Counsel. Mr. Quibbs? Good morning. May it please the Court. Tom Krebs on behalf of FC Stone. I want to start with addressing the appellate jurisdiction issue, because that really is the threshold issue here. And appellants have advanced two grounds for appellate jurisdiction. The first is they contend that this is an appeal from an interlocutory order granting an injunction against an arbitration, and that is pursuant to Section 16A2 of the Federal Arbitration Act. Second, they contend that the order is a final decision with respect to arbitration under 16A3 of the Federal Arbitration Act. And I'll go through those one at a time. I'll start with the 16A2 argument. The starting point there is the district court's order. The district court did not enter an injunction. In fact, FC Stone moved for a preliminary injunction, but that injunction was denied without prejudice, and the count for injunction still remains pending today. Instead, the district court made a series of declarations and directed appellants to arbitrate their claims before the National Futures Association, pursuant to Section 4 of the Federal Arbitration Act. Again, there was no injunction here. Because there was no injunction, appellants can't appeal under 16A2 of the Federal Arbitration Act. So what's that leave? That leaves Section 16A3. Well, the problem with that argument for appellants is there wasn't a final decision here with respect to arbitration. Once again, the count for injunctive relief, it remains pending before the district court. In fact, the district court just last week stayed it for an additional 30 days. Mr. Krebs, same question I posed to Mr. Searby about these stays, where they're coming from, what their purpose is. Sure. So the most recent 30-day stay, we addressed the fact that there are serious concerns that appellants are not complying with the district court's order and Section 4 of the Federal Arbitration Act by actually arbitrating their claims in this district, which is what Section 4 requires. And so based on that and this court's oral argument right now, the district court stayed the case for another 30 days. So there definitely are still issues outstanding before the district court. And from my read of the docket sheet, Judge Lefkoe sought contributions from the parties in writing. And then she issued more directive-type decisions. It was unclear as to whether or not this court had jurisdiction or she had jurisdiction. So she was going to issue directive decisions as to what would happen while the case was on appeal. Is that correct? That is correct. And no one, including appellants, sought any indicative orders from this court to actually change anything in that order. But that is correct, yes. Now, the panel hit on the correct case, the Moglia case. That case stands for the proposition that a pro-arbitration decision coupled with a stay, which this is, rather than a dismissal, which this is not, is not appealable. That's the end of the story. This case is not appealable. It should be dismissed. And Moglia doesn't stand alone. There are cases from other circuits that stand for the same proposition. On equity sales from the Eighth Circuit stands for the same proposition. Accenture LLP from the Second Circuit stands for the same proposition. And Blackwater Security Consulting from the Fourth Circuit stands for the same proposition. And those are set forth on pages six and seven of our appellate brief. The bottom line is this court doesn't have jurisdiction over this appeal, and it should be dismissed. What about, Mr. Krebs, if we were to come to a conclusion that we all know where the case is heading after the 19-page opinion and order from Judge Lefkoe? For efficiency's sake, we should keep it. What are your thoughts on that? Well, I mean, there is no provision in 9 U.S.C. Section 16 stating that we all know where this case is going to go, because we don't necessarily know where this case is going to go. There's still business left before the district court. What is that business? And give us the flow chart as to what could occur while the case would still be in the district court. If the defendants do not agree to arbitrate their claims in the Northern District of Illinois as required by Section 4 of the Federal Arbitration Act, F.C. Stone in all likelihood is going to have to file some sort of pleading paper compelling them to do so under Section 4 of the Act and the district court's order. So at a minimum, that is still pending out there. This is not just a theoretical exercise. It's a reality. Thank you. Any more questions about appellate jurisdiction? No, sir. OK. I want to address briefly appellant's contention that the district court didn't have authority to determine whether the dispute should be arbitrated before the NFA or FINRA. Obviously, appellants say that it should have been a decision made by FINRA. That is clearly incorrect. The starting point is the US Supreme Court case of Halsum versus Dean Winter Reynolds from 2002. Under Halsum, the gateway question of whether the parties have submitted a particular issue or dispute to arbitration, which is the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. Now, appellant's primary argument here is that this was a procedural issue that should have been decided by FINRA, by the arbitrators. But the district court properly rejected that argument for a number of reasons. First, the district court's holding that it had authority to determine this issue is consistent with a wealth of case law where courts have decided the proper arbitral forum if the parties disagree. And I refer the panel to pages 19 and 20 of FC Stone's appellate brief. There we set out a list of cases. First, the Credit Suisse case for the Second Circuit from 2016. Next is the Smith-Barney case from 1990. The Merrill Lynch case, Second Circuit case from 19, I'm sorry, the Smith-Barney was from 2004 circuit. Merrill Lynch is a Second Circuit case from 1990. There's a Roney case from the Sixth Circuit, 1989. By the way, there is a, I realize that this is a district court case from the Northern District of Illinois. But it is right on point. And that's the Bear Stearns case. And I believe the panel should find that case persuasive because it is basically the same facts that are set forth here. But that's not the only reason why appellants are wrong here. And this reason is actually more disturbing. Appellants counsel don't even believe their own argument. And the citations to this are in the appendix and in the record. They have asked two United States district courts in nearly identical proceedings to resolve this very same gateway issue. In the Northern District of Georgia, these same attorneys have sought to compel arbitration before the AAA. In the Southern District of Florida, the same attorneys sought to compel arbitration before FINRA. So what should one ask based on that? Well, if it's proper for the district courts in Georgia and Florida to decide that gateway issue, it certainly is proper for the district court to have decided that gateway issue here. And so for all these reasons, I submit that the district court correctly determined that it had authority to determine the issue of arbitrability. I want to talk briefly about the agreements themselves because appellants raised this in their opening argument here. They contend that the arbitration agreements clearly and unmistakably delegate the issue of arbitrability to the arbitrators. And that's what they actually have to do under the law. It has to be clear and unmistakable. Well, that simply is not correct. And the starting point here is the arbitration clause. You can find that in the supplemental appendix on page 65. And that agreement provides at least a relevant part as follows. Any controversy or claim arising out of or relating to your accounts shall be settled by arbitration. So the next step is to identify the relevant case law. Well, the relevant case law here is this case from this court called Oblix, Inc. versus Wonecki from 2004. And there, the court found that an even broader arbitration clause did not clearly and unmistakably provide that the parties agreed to submit the issue of arbitrability to the arbitrators. Now, there were two clauses. And I'll read the broader one just to give you some context. It provides any dispute or controversy arising out of or relating to any interpretation, construction, performance, or breach of this agreement shall be resolved exclusively by arbitration. Well, the arbitration clause here, as I just read, covers only any controversy or claim arising out of or relating to your accounts. It doesn't cover the interpretation, construction, or performance of the agreement. Well, the point is that under Oblix, the clause in this case clearly is not broad enough to delegate arbitrability to the arbitrators. Appellants also contend that the district court improperly decided the issue of arbitrability at the outset. And appellants rely on this case AT&T Broadband from this court as a 2004 case. And according to appellants, courts in this district must always wait until arbitrations are completed to rule on whether the arbitration form was proper. Well, the district court properly distinguished AT&T Broadband because AT&T Broadband didn't address the issue that was here. In AT&T Broadband, there were not two competing arbitrations, one of which needed the district court's assistance to proceed. And the plaintiff in AT&T Broadband was not seeking to compel arbitration. The plaintiff was seeking to block arbitration. In fact, it was an anti-arbitration action. But below, FC Stone was seeking a pro-arbitration order compelling arbitration before the proper arbitration forum. It wasn't an anti-arbitration action. Everyone here wanted to arbitrate. It was a pro-arbitration action. And by the way, the district court's result, it's consistent with Section 4 of the Federal Arbitration Act. That section specifically empowers a court to compel arbitration when a party refuses to arbitrate as provided in its written agreement. So counsel, in his opening statement, was saying that there was no authority under the Federal Arbitration Act for the district court to do what it did. Well, that's wrong. Just look at Section 4 of the Federal Arbitration Act. It's not an injunction. It's a motion to compel. And if it were an injunction, every single motion to compel arbitration that has ever been entered would be an injunction. That's not the case. Well, I guess what you're saying, if the court is able to determine arbitrability, I can't say it very well, it's still a question of which arbitrator, isn't it? That's correct. But that is the question of arbitrability. Where? Where is it going to take place? Where do the parties agree to arbitrate? Is that for the district court to decide? That is for the district court to decide under the case law that we've cited in our briefs. That is correct. And by the way, any other outcome would have forced the parties to arbitrate in the same issues simultaneously in two forums, the correct one, which was the National Futures Association, and the incorrect one, which was FINRA. I want to clear up a point. There was a point made that there were no arbitrations going forward in NFA at the time. That was not the case. Arbitration claims were filed in the NFA, and that was the problem. There was an arbitration in the NFA, and there was an arbitration in FINRA. I just want to make that point clear. Appellants also contend that the arbitration agreements aren't enforceable because they did not agree to arbitrate in front of the NFA. Once again, the starting point here is looking at the arbitration agreements itself, and like I said, that's on supplemental appendix page 65. Well, this is part of the first sentence of that clause. Any controversy or claim arising out of or relating to your accounts shall be settled by arbitration, either one under the code of arbitration of the National Futures Association, the NFA. So clearly, there was an agreement to arbitrate in front of the NFA. If you read through this entire clause, it doesn't mention FINRA once. There is no agreement to arbitrate before FINRA. Well, is the National Futures Association an arbitrator? Yes, it is. It is a self-regulatory organization that also includes a division that arbitrates futures claims, not securities claims. The issues here were futures, natural gas futures, not securities. I want to walk you quickly through CFTC Rule 166.5 because that does provide the overlay, and it applies to arbitrations that involve futures disputes. The rule has a four-step process for CFT registrants and customers to select a forum for their futures account disputes. The customer is supposed to provide the registrant, which in this case would be FC Stone, with notice of the intent to arbitrate. The registrant provides a list of three qualified arbitration organizations. The customer is then required to select one of the three within 45 days, and in the event that the customer fails to select one, the registrant has the exclusive right to select one of the three arbitration options. By the way, 166.5, contrary to what appellant's counsel may imply, does not require the registrant, in this case FC Stone, to tell appellants that they had 45 days. Now, the email that FC Stone sent to appellant's counsel, it actually provided the term CFTC Rule 166.5. Appellant's counsel should have looked it up, and if appellant's counsel would have looked it up, they would have known they had 45 days. That's not on FC Stone. Once again, the CFTC Rule 166.5, it doesn't mention FINRA. It does, however, provide for arbitration before the NFA. It says the list must include the list of three registered futures associations. That's FINRA. The relevant dates for this analysis is December 13th. That's when FC Stone sent appellant's counsel the notice with the three forums. One option was the NFA. Under Rule 166.5, appellants had 45 days, and that 45-day period expired on January 27th, 2019. During that time period, by the way, which appellant's counsel didn't note, they rejected the three options for arbitration on two separate occasions. Once on December 17th, and that was by email, and then on a second time during a phone conversation, they rejected it again, and that was on December 29th, 2018. They didn't select one within 45 days, and so a few days later on February 4th, FC Stone chose the NFA. That is proper, and based on these undisputed facts, the district court correctly found that FC Stone properly chose the NFA as a forum for the party's futures account disputes under both CFTC Rule 166.5 and the party's agreements because two reasons. One, they didn't choose it within 45 days, and they rejected the forums on two separate occasions and demanded to arbitrate in front of FINRA. Now I want to, I know I don't have much time, but I want to address one of these arguments made by appellants about a letter that was sent. Now appellants contend that some of them did not submit their arbitration forum selection within 45 days as required by CFTC Rule 166.5 in the arbitration agreements because FC Stone stated to the AAA, correctly by the way, that it did not consent to the arbitrations heard, to be heard by the AAA's consumer arbitration forum as opposed to the commercial arbitration forum. But this agreement doesn't make any sense. The party's disagreement over the proper AAA arbitration forum did not stop appellants from sending an election two days after the expiration of the 45-day period. Well, if it was good enough to send two days after it, there's no way it should have stopped them from sending it earlier. Once again, that mistake is on appellants or appellants' counsel. It's not on FC Stone. With respect to customers, the district court correctly determined that customers require, based on case law from numerous circuits, that it refers to this definition. One, not a broker or a dealer who purchases commodities or services from a FINRA member in the course of a member's business activities insofar as those activities are regulated by FINRA, namely the investment banking and securities business activities. Well, none of these activities here related to securities or investment banking. Like I said, these were futures accounts. In fact, the account agreements prohibited appellants from trading securities in them. Is this a specific product, a natural gas, you think you said? Well, it is a specific product. Now, they could have traded other futures products, but they were not allowed. They were prohibited from trading securities products, and that is why they are not customers under the definition of customer for FINRA arbitrations, and hence they don't even qualify to be able to bring an arbitration in front of FINRA, and that's the whole point. I basically used up my time, although I do have a couple extra points to make. The motions for sanctions, the district court clearly didn't abuse its discretion in denying that. The facts present in both Trustmark and AT&T Broadband simply weren't present here for the reasons that I stated before. I believe that I'm up, so... Just waiting for the clock to reset. You used your rebuttal time in the 20 minutes, so it's up to Judge Keeney. I'll give you a minute to use it. Thank you. You had used up your rebuttal time. We don't make the distinction. You have to keep track. Okay, Your Honor. You have a minute to go. There are two arguments that are made that I would request the court look at critically. One is their argument that this was a pro-arbitration decision. That's how they tried to distinguish much of what they were doing from the clear prohibitions of this court against doing it. This was not a pro-arbitration decision. They asked for and got from the district court declaratory judgments against pending arbitrations in FINRA. That's anti-arbitration. In addition, they got an injunction. They got an order commanding us to take these orders and transfer them to the NFA. If you robbed Peter to pay Paul, paying Paul is a good civic act, but you still robbed Peter. And that's their focus on paying Paul. We're talking about robbing Peter. I would commend to the court Bradford Scott. It tells you anti-arbitration decisions are immediately appealable. And Green Tree, which says that you have a final decision when it ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment, that's where we is. There's no serious work left in the district court. That is a mirage. Thank you, counsel. Thank you. Thanks to both counsel, and the case will be taken under advisement.